[No. 61854-7-I.   Division One.   August 17, 2009.]

THE CITY OF SEATTLE, *Petitioner*, v. CLINTON WILSON, *Respondent*.

---

*Thomas A. Carr, City Attorney,* and *Richard E. Greene, Assistant,* for petitioner.

*Robert W. Goldsmith,* for respondent.

*Lenell R. Nussbaum* and *Sheryl G. McCloud* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 BECKER, J. — The city of Seattle has adopted an ordinance making it a crime to commit a traffic infraction that results in death or great bodily harm, without any requirement that the driver have a culpable mental state. We hold that the ordinance violates a state statute that prohibits classifying a traffic infraction as a criminal offense. The superior court properly concluded that respondent Clinton Wilson's municipal court conviction under the ordinance must be reversed and the charge dismissed.

¶2 According to the facts in the police report, to which Wilson has stipulated, he committed a traffic infraction on the morning of September 27, 2006 and caused a fatal

accident. Wilson, traveling southbound, was waiting at an intersection for northbound traffic to clear so he could make a left turn. He was not intoxicated. He began his left turn when the last northbound vehicle had cleared the intersection. A northbound bicyclist, Susanne Scaringi, emerged from the shadows of buildings on the east side of the street. Though she was clearly visible, Wilson did not see her until just before impact. She struck Wilson's van and was thrown to the ground. Despite having the protection of a helmet, Scaringi incurred a head injury from which she died later that day.

¶3 When a person dies as the result of another person's operation of a motor vehicle, the driver may be charged with and convicted of the felony of vehicular homicide if the driver was under the influence of alcohol or drugs or was operating the vehicle in a reckless manner or with disregard for the safety of others. RCW 46.61.520. The King County Prosecutor's Office declined to file vehicular homicide charges against Wilson.

¶4 The city of Seattle charged Wilson with misdemeanor assault in May 2007 under Seattle Municipal Code (SMC) 12A.06.010(B), enacted by the city in 2005. The ordinance provides that a person who "commits any act" defined as a traffic infraction and thereby kills or harms another is guilty of assault:

> A person is guilty of assault when he or she:
>
> . . . .
>
> B. (1) Knowingly operates or knowingly is in actual physical control of a vehicle; and (2) while doing so commits any act defined as an infraction under Title 11, Seattle Municipal Code or Title 46, Revised Code of Washington; and (3) such conduct is a proximate cause of death, great bodily harm or substantial bodily harm to another. As used in this Subsection B, "great bodily harm" and "substantial bodily harm" have the same meanings as in RCW 9A.04.110, as that statute now exists or may hereafter be amended, and "vehicle" has the same meaning as in SMC 11.14.710. This Subsection B is intended to protect the public welfare. No *mens rea* element that is not

specifically stated in this Subsection B shall be inferred or required. Prosecution or punishment under this Subsection B shall not preclude separate prosecution or punishment for any other crime.

¶5 The city alleged that Wilson committed a traffic infraction by failing to yield the right of way when turning left. The city did not allege, and under the ordinance did not need to allege, that Wilson acted carelessly or recklessly when he turned left. No mens rea is required to establish the crime except that the defendant must "knowingly" operate or be in actual physical control of a vehicle.

¶6 The municipal court denied Wilson's motion to dismiss. Wilson waived a jury trial. The court convicted him as charged and imposed a deferred sentence of 24 months. Wilson's insurer settled a civil claim with the bicyclist's family; thus, no restitution was ordered.

¶7 Wilson appealed to the King County Superior Court. The court declared the ordinance invalid because it violates RCW 46.63.020, the statute that decriminalizes most traffic offenses except for enumerated exceptions. We granted the city's motion for discretionary review.

¶8 Seattle is a densely populated city and its streets are busy with traffic. The operation of motor vehicles in close proximity to bicyclists and pedestrians sometimes results in appalling carnage. The Seattle ordinance appears to be an effort to lower the priority that motor vehicles presently enjoy in the competition for use of the public streets. By enhancing the risk of criminal liability a driver faces for merely getting behind the wheel, the city perhaps anticipates a future day in which an automobile is regarded as a dangerous instrumentality justifying the imposition of strict liability. We do not judge the policy choices embodied in the ordinance. Our task is only to determine whether it conflicts with state law.

¶9 A municipal ordinance that conflicts with state law is invalid. An ordinance is presumed valid, and the burden is on the challenger to prove otherwise. *Heinsma v.*

*City of Vancouver*, 144 Wn.2d 556, 561, 29 P.3d 709 (2001). We review de novo the question whether the municipal ordinance conflicts with state law. *State v. Greene*, 97 Wn. App. 473, 476, 983 P.2d 1190 (1999).

¶10 The legislature decriminalized much of the traffic code in response to *State v. Hehman*, 90 Wn.2d 45, 578 P.2d 527 (1978). Laws of 1979, 1st Ex. Sess., ch. 136, § 2, *codified as* RCW 46.63.020; *State v. Reding*, 119 Wn.2d 685, 690, 835 P.2d 1019 (1992); *State v. Ladson*, 138 Wn.2d 343, 355, 979 P.2d 833 (1999). With enumerated exceptions for certain statutes codified in Title 46 of the Revised Code of Washington, or equivalent regulations or local laws, "any act" that constitutes a traffic violation may not be classified as a criminal offense.

> Failure to perform any act required or the performance of any act prohibited by this title or an equivalent administrative regulation or local law, ordinance, regulation, or resolution relating to traffic including parking, standing, stopping, and pedestrian offenses, is designated as a traffic infraction and may not be classified as a criminal offense, except for an offense contained in the following provisions of this title or a violation of an equivalent administrative regulation or local law, ordinance, regulation, or resolution.

RCW 46.63.020.

¶11 There are at present some 60 enumerated exceptions to RCW 46.63.020 within Title 46. Two are the crimes of vehicular assault and vehicular homicide. *See* RCW 46.63-.020(40), (41). Also included among the exceptions are statutes that forbid driving various types of vehicles while intoxicated, driving without a valid operator's license, driving with a suspended license, circumventing an ignition interlock device, transporting dangerous articles, reckless endangerment of roadway workers, racing vehicles on the highway, and many others.

¶12 There is no exception for the traffic code violation of failing to yield the right of way when turning left. This act is prohibited by RCW 46.61.185: "The driver of a vehicle

intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." *See also* SMC 11.55.080 (equivalent Seattle ordinance). Because RCW 46.61.185 is not among the enumerated exceptions to RCW 46.63.020, the superior court determined that the new Seattle assault ordinance, SMC 12A.06.010(B), is in conflict with RCW 46.63.020:

> SMC 12A.06.010(B) incorporates the entire chapter of RCW 46.61 violations and holds that a violation of one with a bad result (serious bodily injury or death) is a new type of traffic crime. Since SMC 12A.06.010(B) is a new traffic crime and it is not listed in or exempted by RCW 46.63.020, it violates the command of that statute and is therefore, invalid.

¶13 The city argues that an "act" that violates the Seattle assault ordinance is more than just a traffic infraction; it is a traffic infraction *plus* the result of death or substantial bodily harm. The city's argument refers to the term "act" as it is used in the statute: "Failure to perform any act required or the performance of any act prohibited by this title . . . may not be classified as a criminal offense." RCW 46.63.020. Plainly, a city may not criminalize the "act" by which a person violates a provision of Title 46 RCW if the violation is not listed among the 60 exceptions to RCW 46.63.020. But according to the city, the statute does not forbid an ordinance that criminalizes the act when the act results in a specified harm. The city reasons that Wilson's "act" was failing to yield the right of way *and* thereby causing a death, and that such an "act" is not prohibited by Title 46 RCW.

¶14 Serious scholarly attention has been devoted to studying whether the term "act," when used in the definition of crimes, should include not only a person's voluntary movement but also the consequences of that movement. The city touches the surface of this discussion by offering a brief quotation from 1 Wayne R. LaFave, *Substantive*

*Criminal Law* § 6.1(a) at 422 (2d ed. 2003): "The view has also been taken that an act includes three constituent parts: (1) its origin, such as bodily activity; (2) certain surrounding circumstances; and (3) *certain consequences.*" (Emphasis added.) The city contends this broadly inclusive definition of "act" should be adopted in interpreting RCW 46.63.020. But the city's reliance on the quotation is misplaced. In context, it is clear that LaFave states the broad definition of "act" only to disapprove of it. According to LaFave, modern criminal theory favors a narrow definition of "act" as a voluntary bodily movement. To define "act" in a way that encompasses circumstances and consequences "presents a serious problem in determining the termination point of one's acts." 1 LaFave, *supra*, § 6.1(a) at 423.

¶15 Yielding the right of way is an act required by Title 46 RCW; or stated alternatively, turning left in front of a bicycle or other type of vehicle is an act prohibited by Title 46 RCW. However stated, Wilson's act—whatever its consequence—is only a traffic infraction under state law unless accompanied by the additional elements that would make it vehicular assault, vehicular homicide, driving while intoxicated, or one of the other criminal offenses recognized in the exceptions under RCW 46.63.020. Seattle cannot classify failure to yield the right of way as a criminal offense merely by defining the "act" in a way that encompasses a particular result of the act.

¶16 The city also relies on *Greene*, 97 Wn. App. at 476-77. *Greene* is inapposite. In that case, the defendant was criminally charged under Seattle's pedestrian interference ordinance. He argued that the ordinance criminalized jaywalking and therefore was invalid because under RCW 46.63.020, jaywalking is not an infraction that may be classified as a crime. But as defined by the ordinance, pedestrian interference is more than mere jaywalking because it involves an intent to obstruct traffic. One who blocks passage with the culpable mental state of intent to obstruct traffic has engaged in behavior classified as the crime of disorderly conduct. RCW 9A.84.030(1)(c). Disor-

derly conduct is not a Title 46 RCW traffic violation, and so the equivalent ordinance of pedestrian interference did not conflict with RCW 46.63.020. As the court stated in *Greene*, "Seattle's pedestrian interference ordinance criminalizes *behavior* that is more egregious than mere jaywalking." *Greene*, 97 Wn. App. at 477 (emphasis added). The city argues that its new assault ordinance similarly criminalizes "behavior that is more egregious" than merely failing to yield the right of way. Again, though, the city is confusing "behavior" with the result of the behavior. Wilson's "behavior" or "act" was failing to yield the right of way. There is no allegation that he had a culpable mental state when he engaged in this behavior.

¶17 By means of the exceptions to RCW 46.63.020, the legislature has allowed municipalities to classify much dangerous traffic-related behavior as criminal. When not done intentionally, recklessly, or negligently, or in a state of intoxication, or with disregard for the safety of others, turning left in front of an approaching vehicle is not among the behaviors the legislature has identified as deserving of criminal sanction. If a city could escape the bounds of the statute by criminalizing traffic infractions that result in death, it could do the same for traffic infractions that result in minor property damage or emotional distress. We conclude a municipality may not escape the bounds of the statute in this manner.

¶18 Because SMC 12A.06.010(B) conflicts with RCW 46.63.020, it is invalid and may not be enforced. We do not address Wilson's further argument that it should be invalidated on the ground that it is in conflict with the requirements of RCW 46.08.020 and .030 for uniformity of traffic regulations throughout the state.

¶19 Affirmed.

LAU and LEACH, JJ., concur.